IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

LARRY TYGER,

     Plaintiff,

  v.                                Case No. 2:21-cv-02284-JTF-cgc

BARCLAYS BANK,

     Defendants.

## REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION TO COMPEL ARBITRATION

Before the Court is Defendant, Barclays Bank Delaware's ("Barclays"), Motion to Compel Arbitration ("Motion"). (D.E.# 15). The Motion requests that this Court compel arbitration and either stay this case pending arbitration or dismiss this case without prejudice. The Motion was referred to the United States Magistrate Judge for Report and Recommendation. (D.E.# 23). For the reasons set forth herein, it is RECOMMENDED that Barclays' Motion be GRANTED and that the case be DISMISSED WITHOUT PREJUDICE.

### I. Procedural History

On March 19, 2021, Plaintiff Larry Tyger ("Plaintiff") filed a "Complaint for Misapplied Payment, Loss of Credit, and Irreparable Harm Due to Loss of Credit" ("Complaint") in the Circuit Court of Shelby County, Tennessee for the Thirtieth Judicial District at Memphis. (D.E.# 1-1).

The Complaint alleges that Barclays did not properly credit his account for payments made from March to July, 2020 and that these errors resulted in his account being reported as delinquent and being referred to a collections agency, both of which have caused irreparable harm to his credit score and detrimentally impacted his financial opportunities.  On May 5, 2021, Barclays removed the case to this Court.

On June 2, 2021, Barclays filed this Motion asserting that, when Plaintiff signed its Cardmember Agreement ("Agreement"), he agreed to arbitrate any claim, dispute, or controversy arising from or relating to his account.  Specifically, Barclays argues that Plaintiff's claims are subject to compulsory arbitration for the following reason: (1) the Agreement is subject to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*; (2) the Agreement is a valid and enforceable contract; and (3) the Agreement encompasses Plaintiff's claims.

On July 9, 2021, Plaintiff filed a Response in Opposition to the Motion ("Response") (D.E.# 28), which argues as follows: (1) that Barclays waived its right to arbitration by removing this case to federal court; and, (2) that the agreement is an unconscionable contract of adhesion. On July 15, 2021, Barclays filed its Reply in Support of its Motion ("Reply") (D.E.# 29), which refutes both arguments presented in Plaintiff's Response.

## II.  Proposed Finding of Fact

Barclays has submitted three exhibits in support of its Motion: (1) the Declaration of Stephenie Beauchamp, who serves as Vice President at Barclays (Mot. at Collective Exh. 1, PageID 48-50); (2) the Cardmember Agreement ("Agreement") that was mailed to Plaintiff along with the credit card (the "Card") for his account (the "Account") (Mot. at Collective Exh. 1 at

2

PageID 51-60); and, (3) excerpted billing statements (the "Billing Statements") from the Account. (Mot. at Exh. 2, PageID 61-66).

These exhibits demonstrate that Plaintiff applied for the Card on or about January 5, 2017. (Collective Exh. 1 at PageID 49 ¶ 5).  On or about January 6, 2017, Barclays mailed Plaintiff the Card along with a copy of the Agreement to the address listed on his application.  (*Id*. at PageID 49 ¶¶ 6, 8 & PageID 51-60).  Barclays has no record of this mailing being returned as undeliverable.  (*Id*. at PageID 49 ¶ 6).

The Agreement states as follows: "[b]y signing, keeping, using, or otherwise accepting your Card or Account, you agree to the terms and conditions of this Agreement."  (*Id*. at PageID 49 ¶ & PageID 53).  It further states that "[y]ou do not need to accept the Account and this Agreement" if you do not wish to use it and that, if you do wish to accept it, "[y]ou do not need to sign this Agreement."  (*Id*. at PageID 52).

The Agreement also contains an arbitration clause, which states as follows:

> [A]ny claim, dispute or controversy ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or your Account, or any transaction on your Account including (without limitation) Claims based on contract, tort (including intentional torts), fraud, agency, negligence, statutory or regulatory provisions or any other source of law and (except as specifically provided in this Agreement) Claims regarding the applicability of this arbitration clause of the validity of the entire Agreement, shall be resolved exclusively and finally by binding arbitration under the rules and procedures of the arbitration Administrator selected at the time the Claim is filed.[1]

---

[1] Paragraph 11 of the Beauchamp Declaration includes a second paragraph that it contends is part of the arbitration clause in the Agreement; however, this paragraph is not contained in the Agreement that has been filed with the Court, and thus, this paragraph has not been considered for purposes of this Motion.  (*Compare* Mot., Collective Exh. 1 at PageID 50, ¶ 11 *with* PageID 59-60).

(Mot., Collective Exh. 1 at PageID 50 ¶ 11, PageID 59).

Barclays' records show that, on or about January 12, 2017, Plaintiff activated the Account via the Barclays website.  (*Id*. at PageID 49 ¶ 7).  After receiving the Card, Plaintiff used the Account to make purchases.  (*Id*. at PageID 50 ¶ 10).

Plaintiff has not submitted any additional evidence to the Court to refute the evidence presented by Barclays.

### III.  Applicable Law

The Sixth Circuit provides a four-factor test to determine whether to grant a motion to compel arbitration under the FAA:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer v. Lehman Brothers, Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).  "Any doubts regarding arbitrability should be resolved in favor of arbitration."  *Andrews v. TD Ameritrade, Inc.*, 596 Fed. App'x 366, 371 (6th Cir. 2014) (citation omitted).

When considering a motion to compel arbitration, "the Court may consider both the pleadings and additional evidence submitted by the parties."  *Jared Hickle v. American Multi-Cinemas, Inc.*, No. 2:15-cv-3068, 2020 WL 6158287, at *1 (N.D. Ohio Oct. 20, 2020) (citing

cases); *see also James Henry v. Smyth Automotive, Inc.*, No. 2:20-cv-3292, at *1 (S.D. Ohio Dec. 30, 2020).  "In deciding a motion to compel arbitration, courts treat the evidence presented as they do on a motion for summary judgment." *Maureen Sandor v. General Elec. Co.*, No. 16-CV-1670, 2016 WL 6868452, at *2 (N.D. Ohio Nov. 22, 2016) (citations omitted).  "Accordingly, courts should 'consider facts in the light most favorable to the Plaintiff when determining whether a valid and enforceable arbitration agreement exists and exercise its wide discretion to look beyond the complaint at pleadings and documents submitted by either party.'"  *Id*. (citations omitted).

**IV. Proposed Analysis and Conclusions of Law**

   *A.  Whether the Parties Formed a Contract*

The Sixth Circuit has long held that, no matter how strongly the federal policy favors arbitration, "'arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration.'"  *Simon v. Pfizer, Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (quoting *United Steelworkers, Local No. 1617 v. Gen. Fireproofing Co.*, 464 F.2d 726, 729 (6th Cir. 1972)).  Thus, the initial question is whether the parties formed a valid contract wherein they agreed to submit any disputes that may arise to arbitration.

In determining whether the parties agreed to form a contract, ordinary state law principles governing contract formation apply. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Devine Mafa v. Amedisys, Inc.*, No. 2:19-cv-02713-TLP-dkv, 2019 WL 7580376, at *3 (W.D. Tenn. Dec. 19, 2019).  Under Tennessee law, a contract must (1) result from a meeting of the minds in mutual assent to the terms, (2) be supported by sufficient consideration, and (3)

contain sufficiently definite terms.  *Id*. (citing *Doe v. HCA Health Services of Tennessee, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)).

As set forth above, the Agreement states as follows: "By signing, keeping, *using or otherwise accepting your Card or Account*, you agree to the terms and conditions of this Agreement." (emphasis added).  It is not disputed that Plaintiff both activated his Account on the Barclays website and elected to use his Card and Account, and both the Beauchamp Declaration and the Billing Records reflect that he did so.  Additionally, Plaintiff does not argue that the contract was not supported by sufficient consideration or that the contract does not contain sufficiently definite terms.  Finally, although Plaintiff states that he never signed the Agreement, the Agreement itself states that a signature is not required and that either use of the Card or Account or actions otherwise demonstrating acceptance of the Card or Account reflects acceptance of the Agreement's terms and conditions.  Thus, it is RECOMMENDED that Plaintiff and Barclays formed a contract when Plaintiff activated his Account and began using the Card.[2]

### B.  *Whether the Agreement is Enforceable*

The next question is whether the Agreement constitutes a contract of adhesion and, if so, whether it contains terms that are unconscionable or oppressive such that the contract should be rendered unenforceable.  *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996) (citations omitted).

---

[2]  Plaintiff's Response also states that he did not receive the Agreement; however, he has not provided any evidence in support of that position.  Even considering the evidence that has been presented by Barclays in the light most favorable to Plaintiff, Barclays records show that it was mailed to him to the address provided in his application and that it was not returned undeliverable.

Under Tennessee law, a contract of adhesion is defined as "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." *Id*. "'[T]he essence of an adhesion contract is that bargaining positions and leverage enable one party to 'select and control risks assumed under the contract.'" *Id.* (citation omitted).

Applying these principles in the same manner as was done by the Tennessee Supreme Court in *Buraczynski*, the Agreement constitutes a contract of adhesion for the following reasons: (1) the Agreement is a standard form contract prepared by the party with superior knowledge of the subject matter—namely, the provision of financial services; and, (2) it was offered on a "take it or leave it" basis, as Plaintiff could not use the Card or the Account without accepting the terms of the Agreement.

However, the conclusion that the Agreement is a contract of adhesion is not determinative of the contract's enforceability. *Id.* "Enforceability generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Id*. (citation omitted). Other than conclusory statements, Plaintiff has not explained why he believes the Agreement is unreasonable, oppressive, or unconscionable.[3] Further, Plaintiff has not presented any controlling authority that would require such a conclusion.[4]

---

[3]  Plaintiff conclusorily mentions that it is oppressive to conceal terms in fine print or to couch them in vague or obscure language; however, the arbitration clause here is set forth in the body of the Agreement, and Plaintiff has elaborated on how he believes its terms were vague, obscure, or otherwise concealed.

[4]  Plaintiff solely relies upon *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335 (Ky. Ct. App. 2001) for the principle that a contract of adhesion is necessarily oppressive and procedurally unconscionable; however, not only is

Accordingly, it is RECOMMENDED that, while the Agreement is a contract of adhesion, it is nonetheless enforceable.

### C.  Whether Barclays Has Waived its Contractual Right to Arbitration

"Under the FAA, a party can waive a right to arbitrate." *Dantz v. American Apple Group, LLC*, 123 Fed. App'x 702, 707 (6th Cir. 2005) (citing *American Locomotive Co. v. Gyro Process Co.*, 185 F.2d 316, 318 (6th Cir. 1950)).  The Sixth Circuit has stated that there are two ways for a party to waive an agreement to arbitrate—the first is by taking actions that are completely inconsistent with any reliance on an arbitration agreement, and the second is by "delaying its assertion to such an extent that the opposing party incurs actual prejudice." *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012) (quoting *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 356 (6th Cir. 2003)).  "However, mere removal of a case to federal court, and nothing more, does not constitute waiver of a defendant's right to arbitration." *Dantz*, 123 Fed. Appx. at 707; *see also Andrews v. TD Ameritrade, Inc.*, 596 Fed. Appx. 366, 371 (6th Cir. 2014) ("Removal to federal court does not waive a party's otherwise enforceable right to arbitrate.").

The Sixth Circuit has considered what additional steps must be taken beyond removal to evidence the intent to waive arbitration rights.  *See, e.g., Johnson Assocs.*, 680 F.3d at 718-19 (concluding that the defendant waived its arbitration rights when it failed to raise arbitration in its answer, asserted a counterclaim, and scheduled and requested discovery following formal settlement discussions); *Hurley v. Deutsche Bank Trust Co. Americas*, 610 F.3d 334, 338-340 (6th

---

this not controlling authority, the *Conseco* court reached the opposite conclusion and determined that, even though the arbitration clause was contained in a contract of adhesion, it was enforceable. *See id.* at 341-45.

Cir. 2010) (concluding that the defendant waived its arbitration rights when it litigated the case for two years, filed dispositive motions without referencing the arbitration agreement, and filed a motion to change venue).  Plaintiff has not argued that any such factors exist here.  Further, this Court has held that neither filing a corporate disclosure statement nor filing a motion for extension of time—as Barclays has done in this case—result in the waiver of arbitration rights.  *See Visanji Gala v. Tesla Motors TN, Inc.*, No. 2:20-cv-2265-SHM-tmp, 2020 WL 7061764, at *7-*9 (W.D. Tenn. Dec. 2, 2020).  Accordingly, it is RECOMMENDED that Barclays has not waived its contractual rights to arbitration.

## V.  Conclusion

When a valid arbitration agreement exists and the dispute at issue falls within its scope, arbitration should be compelled, and the complaint should be dismissed without prejudice.  *See, e.g.*, *Devine Mafa v. Amedisys, Inc.*, No. 2:19-cv-02713-TLP-dkv, 2020 WL 214755, at *1 (W.D. Tenn. Jan. 14, 2020).  Accordingly, it is RECOMMENDED that Barclays' Motion to Compel Arbitration be GRANTED and that the case be DISMISSED WITHOUT PREJUDICE.

**SIGNED** this 25th day of October, 2021.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT.  28 U.S.C. § 636(b)(1)(C).  FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**